UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDUARDO SHANE LUIS MALAVÉ and
JACQUELYNN GRUNERT,
    *Plaintiffs*,

    v.

KIMBERLY WEIR, *et al*,
    *Defendants*.

No. 3:16-cv-00009 (JAM)

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Eduardo Malavé and Jacquelynn Grunert are husband and wife, and they have sued several defendant correctional officials for preventing them from visiting each other while Malavé serves a term of imprisonment at the Carl Robinson Correctional Institution in Enfield, Connecticut. Plaintiffs have moved for a preliminary injunction, and I now conclude in light of changed circumstances—most significantly, the restoration of plaintiffs' rights to non-contact visits—that plaintiffs cannot establish ongoing irreparable harm to justify a grant of preliminary injunctive relief. Accordingly, I will deny their motion for a preliminary injunction, without prejudice to their right to seek injunctive relief if additional visitation restrictions are imposed and without prejudice to their claims for monetary damages from defendants' prior denial of visitation.[1]

### BACKGROUND

On January 5, 2016, plaintiffs filed their *pro se* complaint alleging that defendants have unconstitutionally deprived them of visitation privileges. The complaint alleges that Grunert was barred from visiting Malavé or speaking to him by telephone because of a false disciplinary

---

[1] The Court appreciates the assistance of *pro bono* counsel Damian Gunningsmith and John Cordani, Jr., of the law firm of Carmody Torrance Sandak & Hennessey, LLP, and for their willingness to represent the interests of plaintiffs in connection with their request for injunctive relief.

report by defendant Lt. Nathan Alexander that accused Grunert of smuggling contraband into the prison to Malavé during a social visit in August 2015. Plaintiffs sought injunctive and monetary damages relief on the basis of their rights to freedom of association under the First Amendment, as well as the right of Malavé to be free from cruel and unusual punishment under the Eighth Amendment and his right to procedural and substantive due process under the Fourteenth Amendment. I have previously issued an initial review order examining the potential legal grounds for plaintiffs' claims and concluding that the claims were sufficient on their face to allow the matter to proceed. *See* Doc. #8-2.

On April 8, 2016, plaintiffs moved for preliminary injunctive relief, alleging irreparable harm to their marriage from the continued denial of visitation since August 25, 2015. Defendants filed an opposition to the motion for preliminary injunctive relief, contending that plaintiffs could not show the requisites for preliminary injunctive relief, including irreparable harm and a likelihood of success on the merits.

Defendants submitted extensive materials in support of their position. According to an affidavit signed by Lt. Alexander (Doc. #35-3 at 2-3), he took the action that led to this lawsuit on the basis of information he received from two inmate informants in August 2015 that Malavé was the main supplier of narcotics at the prison, and that Grunert would pass the drugs to him with a kiss during visitations. He further stated that, following a visit from Grunert with Malavé on the evening of August 25, 2015, he allegedly observed Malavé on camera drink a large cup of water, then lean over as if he was attempting to regurgitate something.[2]

---

[2] Despite Malavé's request that the video of this allegedly incriminating conduct be preserved, his request for the video was denied on the ground that "the time frame of preservation has expired." Doc. #37 at 18. Recently, this Court has raised substantial concerns about the Department of Correction's failure to retain video evidence in violation of its own 4-year retention policies. *See Thomas v. Butkiewicus*, 2016 WL 1718368 (D. Conn. 2016). In view of the centrality of the video evidence to the subsequent determination that Grunert was the source of contraband and to bar Grunert from speaking by telephone with or visiting Malavé, further proceedings in this case may shed light on why video evidence of what Lt. Alexander allegedly observed was not preserved.

On the following day, Lt. Alexander conducted a search of Malavé and his housing unit. A strip search of Malavé did not yield any contraband, but a drug-sniffing dog allegedly alerted to narcotics in Malavé's bunk area. Officers found a pencil eraser cap—which Lt. Alexander characterized as a homemade smoking pipe with marijuana residue—and a needle.

The searches of Malavé and his bunk area also led to discovery of a "Biker" magazine with sexually explicit photos and evidence on Malavé's forearm that he had acquired new tattoos while incarcerated. Malavé was charged with three Class A disciplinary violations (for the contraband, for the photos, and for the tattoos) to which he pleaded guilty on August 28, 2015. The disciplinary reports reflect that he was subject to the following sanctions: punitive segregation through September 15, 2015, and loss of phone and visitation privileges through November 14, 2015. *See* Doc. #47-2 at 2-13 (discipline reports).

Warden Kimberly Weir has attested in an affidavit to the Court that she advised Grunert by letter on September 15, 2015, that she had been removed from Malavé's visiting list, because she had conspired to convey contraband into the prison. Warden Weir also approved an order at that time to bar Malavé from speaking with Grunert by telephone. On March 28, 2016, Warden Weir allowed Malavé to resume telephone communication with Grunert but continued as of that date to bar Grunert from visiting Malavé for an indefinite time period.

At an earlier point in this litigation, defendants opposed plaintiffs' motion for injunctive relief in part on the basis of defendants' claim that "there is no credible evidence that [Malavé] is married." Doc. #35 at 2. In response, plaintiffs filed a copy of their marriage certificate with the Court showing that they have been married as of December 2012. *See* Doc. #37 at 10.

On July 18, 2016, I convened a status conference hearing to determine how to proceed with respect to plaintiffs' preliminary injunction motion. Of particular concern to me was that

3

defendants had wrongly claimed that plaintiffs were not married. Defendants' counsel conceded at this hearing that plaintiffs were not only married but also that this fact was known to the Department of Correction, because plaintiffs were married while Malavé was previously incarcerated at another Connecticut prison.

I was also troubled by additional information I learned at the hearing. I was told by defendants' counsel that at some point before the hearing that Warden Weir had orally "offered" to restore plaintiffs' visiting privileges upon learning that plaintiffs were married but that Malavé had said that he had no interest. I did not understand why the warden of a prison facility would bargain by means of an "offer" to an inmate to restore his visiting privileges and what the inmate would be presumably required to give up in return for such an "offer".[3] I can think of no legitimate reason why this kind of bargaining process would take place between a warden and an inmate, rather than the warden simply restoring visiting privileges to an inmate if there is no longer a continuing penological objective for a particular visiting restriction to remain.

After the status conference of July 19, defendants filed motions to dismiss plaintiffs' motion for preliminary injunctive relief on the ground that this request for injunctive relief was now moot. Docs. #45 and #47. Based on a sworn affidavit from defendant Paul Ouellette in his capacity as the prison's acting warden, defendants represented that Grunert had now been restored as of July 19, 2016, to Malavé's active visiting list for non-contact visits and that—absent additional misconduct—she would be restored to his list for contact visits on September 15, 2016.

The asserted reason for delay in restoration of contact visits was that Malavé remained subject to a one-year bar on contact visitation as a result of each of his three Class A disciplinary

---

[3] *See also* Doc. #45-3 at 2-3 (affidavit of acting warden that Warden Weir made an "offer" on May 24, 2016, to restore non-contact visits but that Grunert was not actually restored to the active visiting list until July 19, 2016, the day after the Court's status conference hearing with the parties).

violations (for drug contraband, for sexually explicit photos, and for tattoos) that stemmed from the search of his person and his bunk area on August 26, 2015. According to defendants, it is an unwritten policy at the Robinson Correctional Institution to prohibit contact visits for one year following a Class A disciplinary violation, with the one-year time period measured as of the date that an inmate is released from punitive segregation for the disciplinary violation.[4] Because at most only one of the three Class A disciplinary violations (for drug contraband allegedly received by Malavé from Grunert) forms the basis for the continuing visitation restrictions now challenged by plaintiffs in this case, defendants contend that plaintiffs' request for injunctive relief from the continuing visitation restriction is now moot.

Plaintiffs contend that their request for injunctive relief is not moot for two reasons. First, they contend that the continuing non-contact restriction violates due process, because there is no indication that the one-year ban on non-contact visits is authorized by Department of Correction rules or that Malavé was given fair notice of this additional sanction beyond the sanctions that were imposed as they appear in the disciplinary reports. Thus, they claim that the prison's additional unconstitutional conduct may not serve as the basis for a conclusion that plaintiffs' request for injunctive relief is moot. Second, plaintiffs contend more generally that a defendant's voluntary cessation of unlawful conduct does not moot a controversy and that defendants have not made an adequate showing that their allegedly wrongful conduct will not recur.

### DISCUSSION

---

[4] Defendants have produced the Carl Robinson Correctional Institution's inmate handbook that provides in part that "any inmate found guilty of a Class 'A' disciplinary report will be placed on non-contact visiting status." Doc. #47-3 at 3. But neither the handbook nor any other written policy provides that this status shall remain in effect for one year (much less from what date the one-year period will commence), and—in contrast to the other sanctions that appear in Malavé's disciplinary reports—there is no written record of a one-year non-contact restriction being imposed against Malavé as a result of his disciplinary violations. According to a supplement affidavit submitted by defendants, a disciplinary investigator orally advised Malavé at the time of his guilty plea to the disciplinary violations that he would be restricted for one year to non-contact visits. Doc. #54-1 at 2.

The Second Circuit has made clear that "[a] preliminary injunction is an equitable remedy and an act of discretion by the court." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). The Court's exercise of discretion, however, is limited by well-established criteria that require a party to make certain threshold showings in order to qualify for preliminary injunctive relief. "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Id.* (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)); *see also Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).

Here, I conclude—in light of the changed factual circumstances of this case—that plaintiffs cannot show ongoing irreparable harm. It is undisputed that they are no longer subject to a categorical ban on telephonic or in-person visitation. As of July 19, they are subject only to a restriction on contact visits. They are otherwise free to talk by telephone and to visit in person, and—absent additional disciplinary restrictions—they will be free to resume contact visits less than two months from now. Insofar as their request for injunctive relief relies on a claim of irreparable harm to their marriage (*see* Doc. #37 at 1, 4), I cannot conclude that solely a time-limited, non-contact visiting restriction will wreak irreparable harm to their marriage. *See Polansky v. Wrenn,* 2012 WL 2360536, at *3 (D.N.H. 2012) (no irreparable harm to prisoner from restriction to non-contact visits from family members), *report and recommendation adopted,* 2012 WL 2360530 (D.N.H. 2012); *see also Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 331 F.3d 342, 349 (2d Cir. 2003) (noting that notwithstanding usual rule that "the allegation of a First Amendment violation satisfies the irreparable injury requirement, . . . we have suggested that, even when a complaint alleges First Amendment injuries, irreparable

harm must still be shown—rather than simply presumed—by establishing an actual chilling effect"). Plaintiffs' due process argument regarding the one-year ban on contact visits also does not satisfy the usual rule that alleging a constitutional violation requires no additional showing of irreparable harm, *see Statharos v. New York City Taxi and Limousine Comm'n,* 198 F.3d 317, 322 (2d Cir.1999), because it is well established that a time-limited ban on contact visitation is not a deprivation of a liberty interest requiring due process. *See Overton v. Bazzetta*, 539 U.S. 126, 137 (2003); *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiffs contend that defendants have offered only a conditional promise that they will be restored to full contact visiting privileges. But I am not convinced that defendants will not live up to their promise as attested to by the prison's acting warden or that it is likely that defendants will act unlawfully to impose additional visitation restrictions. If additional visitation restrictions are imposed on plaintiffs during the course of this litigation and if there is a basis for a claim that these additional restrictions are unlawful (*i.e.*, not the result of substantiated misconduct or other legitimate security concerns) and that they will cause irreparable harm to plaintiffs' marriage, then plaintiffs may renew their request for preliminary injunctive relief, and the Court will promptly determine such motion.

In view that plaintiffs cannot at this time establish the irreparable harm that is required for them to obtain preliminary injunctive relief, there is no need for me to consider defendants' argument that their request for injunctive relief is moot. Nonetheless, I am troubled by the evidence in this case that suggests that prison administrators at the Carl Robinson Correctional Institution are imposing visitation restrictions or additional penalties on inmates that have not been set forth in writing in disciplinary reports, or set forth with reasonable specificity in any other written form that is furnished to inmates, to ensure that they have fair notice of the

sanctions that they have incurred as a result of disciplinary misconduct. In addition and apart from concerns for basic fairness, there is reason to question—as persuasively argued by plaintiffs—whether the prison's policy is consistent with the DOC's administrative directives. In any event, if there is indeed an unwritten rule at the prison to impose a one-year term of non-contact visitation as a sanction against any prisoner who commits a Class A disciplinary violation, prison administrators and their counsel may wish to consider whether retaining such an unwritten rule is lawful, and how it otherwise serves a legitimate penological objective to impose penalties on prisoners in accordance with unwritten rules.

## CONCLUSION

Plaintiffs' motion for preliminary injunctive relief (Doc. #33) is DENIED for lack of a substantial showing of ongoing irreparable harm to necessitate a grant of injunctive relief at this time. Defendants' mootness motions (Docs. #45, #47) are DENIED as moot in light of the Court's order denying preliminary injunctive relief. The preliminary injunction hearing that was previously scheduled for July 29, 2016, is cancelled. The Court's scheduling order (Doc. #8) otherwise remains in full force and effect absent a prompt motion from any party on good cause shown to amend the scheduling order.[5]

It is so ordered.

Dated at New Haven this 28th day of July 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[5] The Court had appointed attorneys Gunningsmith and Cordani for the limited purposes of representing plaintiffs with respect to the preliminary injunction motion and possible hearing in this case. If attorneys Gunningsmith and Cordani are not amenable to continuing the representation of plaintiffs for the balance of this litigation through any remaining discovery, dispositive motions, and any other proceedings, they may file a motion to withdraw their appearances.